## THE CORNELL NO. 41.

### CORNELL STEAMBOAT CO. v. CITY OF NEW YORK.

#### No. 16071.

District Court, E. D. New York.

Aug. 13, 1942.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Robert S. Erskine, of New York City, of counsel) for libellant.

William C. Chanler, Corporation Counsel, of New York City (George S. Franklin, Asst. Corporation Counsel, of New York City, of counsel), for respondent.

CAMPBELL, District Judge.

This is a suit for damages sustained by the libellant's tug Cornell No. 41, about 9:25 o'clock p. m. on July 17, 1940, through a collision between the top of the tug and some scaffolding on the under side of the Third Avenue Bridge over the Harlem River.

On June 4, 1940, the respondent sent out, and the libellant received, a notice that repairs were to be made to the Third Avenue Bridge, and that scaffolding was to be hung over the river channel, and also that said scaffolding would not interfere with the opening of the bridge for the passage of vessels.

The Harlem River has but one channel.

Mr. Oliver, the Superintendent of Operations of the libellant, testified that he read said notice, and that copies of that notice were given to the masters and captains of tugs of the libellant, operating on the Harlem River, by putting the same in their boxes, where they received mail and instructions, at the office, and posting the same on the bulletin board at the office of the libellant.

The following tugs of the libellant, whether steam or diesel, were arranged to pass under the bridges, without opening them, and they are known as low stack boats, to-wit: Cornell No. 41, R. G. Townsend and the J. G. Rose.

On July 17, 1940, the tug Cornell No. 41, with her master at the wheel and in command, passed through the Harlem River from 96th Street, East River, with a loaded coal boat in tow, on the tug's starboard side. When the Cornell No. 41 and her tow entered the Harlem River the tide was ebb, that is, flowing to the westward, and with the tug. The Cornell No. 41 and her tow passed under the Second Avenue Bridge, which was about 800 feet from the Third Avenue Bridge. When the Cornell No. 41 and her tow had cleared the Second Avenue Bridge, her master says, he observed two red lights on the New York side, but did not observe the scaffolding or lights on the Bronx side, until she was close to the bridge, and that the lights on the Bronx side were not red. He further says, that he had intended to go through the Bronx side, which he believed was clear, and that, he believed that the New York side was closed. He further said, that when he saw the scaffolding on the Bronx side, he was about 75 to 100 feet from the bridge, too close to stop and back, without colliding with the abutment, and he stopped the engine of the tug, and let her drift through, the pilot-house of the tug hitting the scaffolding under the bridge, and sustaining damage, the search light being torn off, and also the stack and part of the upper deck damaged by contact with such scaffolding under the bridge.

The Master of the Cornell No. 41 is in error, as to the color of the lights on the Bronx side, as they were red, although not of as deep a shade as those on the New York side. This is clearly established by the testimony of the men on the bridge, who lighted the lights, and inspected them after they were lighted, and found them burning.

■ They should have been observed either by the master, or the deckhand of the tug, who was in the pilot-house, acting as lookout, before the tug arrived so close to the bridge, and, under the conditions prevailing at the time, the master should have signalled the bridge to open, but no such signal was given at any time.

The libellant seeks to overcome the negligence of the master of the tug Cornell No. 41, by contending that he was justified by custom, in assuming that, under the notice of June 4, 1940, in question, the scaffolding would cover only one side of the channel at a time, and be marked by red lights, and that the bridge would open only between 10 a. m. and 5 p. m. as formerly.

In support of this position, libellant offered in evidence the notice, which Mr. Oliver testified was typical of notices which had customarily been received from the City. The notice, offered in evidence, was of April 12, 1940, and related to the repairs on a different bridge.

That notice, specifically provided, that the scaffolds would be suspended over only one channel at a time, and that the work would not interfere with the opening of the bridge for the passage of boats.

■ The difference between the notice of June 4, 1940, in question, from the notices theretofore sent, of which the notice of April 12, 1940, was typical, is clearly apparent, and such difference, if given any consideration, would have apprised the libellant, its agent or servant the master of the Cornell No. 41, that the scaffolding extended across the bridge from one side to the other, and have caused libellant and such master to seasonably signal the bridge to open, because, with the scaffolding extended across from side to side, the construction work would interfere with the passage of boats, unless the bridge would open at all hours, instead of only from 10 a. m. to 5 a. m.

That my construction supra is the proper construction of the notice of June 4, 1940, and that it abrogated the custom contended for by libellant, if such a custom existed, is clearly shown by the actions of libellant's tugs, the R. G. Townsend and the J. G. Rose, in going through the opened draw of the bridge, because of scaffolding, on several occasions between 5 p. m.

and 10 a. m. June 17, 1940, the date which said notice gave, for its going into effect, and July 17, 1940, the date of the accident.

The notice received by the libellant about a week after July 17, 1940, the date of the accident, does not strike me to be of any importance, but only intended to secure better obedience to its former notice of June 4, 1940, which the libellant, its agent or servant had disregarded, by running into the scaffolding under the bridge on July 17, 1940.

The respondent was without fault or blame, and the libellant was solely at fault and to blame.

A decree should be entered in favor of the respondent, against the libellant, dismissing the libel with costs.